[No. 57751-0.   En Banc.   September 5, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. WAYNE P. MYERS, *Appellant.*

*Larry C. Stephenson,* for appellant.

*Andrew K. Miller, Prosecuting Attorney,* and *Jeffrey L. Finney, Deputy,* for respondent.

DORE, C.J. — Myers challenges his conviction of possession of a controlled substance with intent to deliver. We

hold that evidence seized pursuant to a telephonic warrant must be suppressed when the failure to record sworn statements deprives the appellate court of a record sufficient to review the magistrate's probable cause determination. We reverse.

## FACTS

The Kennewick police received an anonymous tip that Wayne Myers sold drugs from his home. On May 21, 1990, police Officers Hiles and Laschied went to Myers' home. The uniformed officers walked to the front porch, knocked on the door, and identified themselves. The officers smelled marijuana when Myers opened the door. Before the officers spoke with Myers, they read him his *Miranda* rights.

Hiles told Myers that they received a tip that he was dealing in narcotics and asked if he and his partner could search the house. From where he stood on the porch, Hiles could see a cigarette rolling machine in the house.

Myers told the police he wanted to go get some Alka-Seltzer. Hiles expressed concern that there might be weapons in the house and asked if he could accompany him. Myers turned, "kind of motioned", and said "come on in" or a similar response that the officers believed expressed consent. The officers entered the house, walked with Myers to the kitchen, and walked back to the front door. Walking through the house, the officers saw a marijuana cigarette, cigarette papers, and a "roach" clip.

At the front door, Hiles again asked if he could search the house. Myers denied permission and stated that "the book" required that the police get a warrant. Myers denied Hiles permission to search the house which precipitated Hiles to seek a search warrant. Hiles then arrested Myers for possession of marijuana and drug paraphernalia.

Hiles had recording equipment sent to the house, set up the equipment, tested it, and then called Judge Staples

seeking a warrant. Hiles told the judge[1] why they were at Myers' house and what they observed. Hiles advised the judge that a neighbor of Myers said he did Myers' yard work and that he knew what cocaine looked like, and that he saw people leave Myers' house with such a drug. Hiles told the judge they were invited into Myers' home. Hiles recalled asking permission to search the premises and that the judge authorized him to sign a search warrant that allowed police to search Myers' premises. The warrant authorized the officers to seize "all controlled substances", "any papers, documents or other matter tending to establish the identity of persons exercising . . . control over . . . controlled substances found" in Myers' house, and "all other evidence . . . of violation of the Uniform Controlled Substance Act." Brief of Defendant app. A. The police searched the house and seized numerous items including drugs, materials for weighing and packaging drugs, and an accounts book.

The day after the search, Officer Hiles learned that the tape of his conversation with Judge Staples either was erased or was never recorded. Officer Hiles then wrote down what he recalled of the events the preceding day.

The State, then charged Myers with possession of a controlled substance with intent to deliver. Myers moved to suppress the evidence seized at his home because the police did not comply with CrR 2.3 and the search violated his Fourth Amendment rights. At the suppression hearing, on September 1, 1990, Officers Hiles and Laschied testified as summarized above.

Judge Staples testified that he did not have independent recollection of the events on May 21, 1990. He repeatedly expressed concern that what he believed was independent recollection of the events, in fact, was his

---

[1] The content of the conversation is all based on Hiles' recollection and testimony at the suppression hearing because the tape of the conversation was lost.

recollection of witnesses' testimony *about the events*, offered at other hearings in the case. The judge remembered receiving the call for a warrant and authorizing the warrant. He also remembered that the officer he spoke with "had gone into the house to talk with the person and . . . said he found something." Verbatim Report of Proceedings, at 11-13. Judge Staples did not recall swearing Hiles in, the officer's or defendant's name, the details of the search, or the details based upon which he determined that probable cause existed to search Myers' property.

The court found that CrR 2.3(c) required a recording be made when an officer obtained a telephonic warrant "to afford the public the protection of . . . a record to review for probable cause." Clerk's Papers, at 12; Verbatim Report of Proceedings, at 64. Based on the testimony of Judge Staples, the trial court refused to suppress the evidence seized at Myers' house. It concluded that the testimony of Officers Hiles and Laschied about the phone call to Judge Staples constituted a record of the probable cause determination. The court convicted Myers of possession of a controlled substance with intent to deliver.

Myers appealed his conviction alleging error by the court when it did not suppress the evidence seized in the defendant's home. The Court of Appeals certified the following question to this court:

> Whether the court erred in failing to suppress evidence obtained pursuant to a telephonic search warrant when the telephone affidavit for the warrant was either not recorded or [was] erased prior to transcription or may the officer testify as to what was said during the telephone conversation to establish probable cause for issuance of the warrant?

## ANALYSIS

■ Myers alleges that reconstructing the affidavit upon which the search warrant was issued and admitting evidence seized pursuant to the reconstructed telephonic warrant violates the fourth amendment to the federal

Constitution and article 1, section 7 of the State Constitution. The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath . . . particularly describing the place to be searched and the persons or things to be seized.

Article 1, section 7 of our State Constitution, which offers greater protection of individual rights than the Fourth Amendment, provides that:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

*See State v. Gunwall*, 106 Wn.2d 54, 65, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Both the Fourth Amendment and article 1, section 7 of our State Constitution render warrantless searches per se unreasonable unless they fall within "a few specifically established and well-delineated exceptions." *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984). Both constitutional provisions require that all facts establishing probable cause to search be presented while under oath, to a neutral magistrate, for impartial review and that the magistrate make the crucial probable cause determination. *State v. Neslund*, 103 Wn.2d 79, 84, 690 P.2d 1153 (1984); *United States v. Anderson*, 453 F.2d 174, 176 (9th Cir. 1971).

Superior Court Criminal Rule 2.3 governs issuance of warrants within constitutional limits in Washington. *See State v. Fields*, 85 Wn.2d 126, 128-29, 530 P.2d 284 (1975). CrR 2.3(c) states that:

> There must be an affidavit . . . sworn testimony establishing the grounds for issuing the warrant. *The sworn testimony may be an electronically recorded telephonic statement. The recording or a duplication of the recording shall be a part of the court record and shall be transcribed if requested by a party if there is a challenge to the validity of the warrant* or if ordered by the court.

(Italics ours.)

■ Myers alleges that the plain language of CrR 2.3 requires electronic recordings of oral statements be contemporaneous, and that the State cannot reconstruct recordings with later testimony. When the language of a rule is clear and unambiguous, there is no room for judicial construction. *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 143, 787 P.2d 8 (1990). The text of CrR 2.3 does not unambiguously state that telephonic statements must be made contemporaneously. Principles of statutory construction, therefore, govern our construction of the rule. *State v. Hutchinson*, 111 Wn.2d 872, 877, 766 P.2d 447 (1989).

■■ This court, as the author of CrR 2.3, is in the best position to determine the meaning of the rule. *Heinemann v. Whitman Cy.*, 105 Wn.2d 796, 802, 718 P.2d 789 (1986). We give the words in the court rules their plain and ordinary meaning. *Heinemann*. The word "may", in the phrase "[t]he sworn testimony may be . . . electronically recorded", refers to the antecedent term "sworn testimony". *See Boeing Co. v. Department of Licensing*, 103 Wn.2d 581, 587, 693 P.2d 104 (1985). The permissive term "may"[2] suggests that other means of originally memorializing sworn testimony, such as written notes of the magistrate, are available to the State. *See State v. Liberti*, 161 N.J. Super. 575, 392 A.2d 169 (1978). The term "may" does not, however, allow the State to substitute a reconstruction of an entire telephonic affidavit where no original recording of the statements exists.

The State's contention that the testimony at the suppression hearing constituted a "duplicate of the recording" under CrR 2.3 is unpersuasive. *Webster's Third New International Dictionary* 702 (1986) defines a "duplicate" as "two corresponding or identical parts . . . being exactly the same as one or more others of its kind . . . either of two things that exactly . . . correspond to each other . . .". The testimony offered at the suppression hearing was not a "duplicate" because no original of the testimony existed

---

[2]*Issel v. State*, 39 Wn. App. 485, 487, 694 P.2d 34 (1984).

and because the magistrate admitted his hearing testimony was not identical to the original conversation. Previous versions of CrR 2.3 required that the magistrate record telephonic statements "at the time transmitted" on a recording device in his possession.[3] The State correctly notes that the current version of CrR 2.3(c) omits the phrase "at the time transmitted". The language of CrR 2.3(c) was altered for two reasons: (1) to eliminate the "frequently impractical" requirement that a judge always have custody of a tape recorder; and (2) to allow transcription of the recording only if the warrant was in question. *Proposed CrR 2.3, Judicial Council Comment,* 98 Wn.2d advance sheet 3, at xix (1983). There is no clear evidence, as the State argues, that the council intended to abolish the requirement for some contemporaneous record of sworn telephonic statements, even if not prepared by the judge. Because the text and history of CrR 2.3 do not unequivocally establish whether the electronic record of a telephonic affidavit must be contemporaneous or may be reconstructed, we turn to judicial decisions for guidance.

Our courts have not addressed whether the Fourth Amendment or Const. art. 1, § 7 demand that a record of the conversation upon which the warrant issues be made at the time the conversation occurred. *State v. Walcott,* 72 Wn.2d 959, 967, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890 (1968) and *State v. Kuberka,* 35 Wn. App. 909, 911, 671 P.2d 260 (1983), the cases that the parties rely upon, are not dispositive, because: (1) the warrants at issue in those cases were not telephonically issued; and (2) a written complaint or affidavit was filed in support of the warrants, and existed intact at the time of review. *Walcott,* at 960-61, 965; *Kuberka,* at 910-11. Further, *Kuberka* did not address a violation of CrR 2.3.[4] *Kuberka,* at 912. The court in *State v. Mannhalt,* 33 Wn. App. 696,

---

[3]The rule was amended in 1983. *See* 99 Wn.2d 1112 (1983).

[4]*Kuberka* addressed a violation of JCrR 2.10, now Criminal Rules for Courts of Limited Jurisdiction 2.3.

699, 658 P.2d 15, *review denied*, 100 Wn.2d 1024 (1983),[5] stated "Use of sworn testimony, contemporaneously recorded, is substantial compliance with the intent and purpose of [CrR 2.3]." *Mannhalt* is not dispositive, however, because in *Mannhalt* a complete electronic recording and a transcription of the recording existed intact. *Mannhalt*, at 698.

Federal courts have addressed Fourth Amendment claims based on violations of Fed. R. Crim. P. 41(c), the rule upon which our CrR 2.3(c) is modeled.[6] In *United States v. Rome*, 809 F.2d 665 (10th Cir. 1987), the magistrate recorded the entire conversation on which the warrant was based, but did not record earlier conversations with the agent about the warrant process. The court concluded that failure to record all conversations about the warrant did not justify suppressing the evidence because the affidavit read to the magistrate, which was completely recorded and transcribed, supplied facts sufficient to find probable cause for a search. *Rome*, at 669.

---

[5]Mannhalt filed a habeas corpus petition in federal court. *Mannhalt v. Reed*, 847 F.2d 576 (9th Cir.), *cert. denied*, 488 U.S. 908 (1988). The court reversed Mannhalt's conviction and remanded the matter on a ground unrelated to the evidentiary issue raised before our courts: ineffective assistance of counsel, due to a conflict of interest.

[6]Fed. R. Crim. P. 41(c)(2)(A), (D) provides, in part, that:
**"Search and Seizure**
" . . . .
"(2) . . ..
"(A) General Rule. If the circumstances make it reasonable to dispense with a written affidavit, a Federal magistrate may issue a warrant based upon sworn oral testimony communicated by telephone . . ..
" . . . .
"(D) Recording and Certification of Testimony. When a caller informs the Federal magistrate that the purpose of the call is to request a warrant, the Federal magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. If a voice recording device is available, the Federal magistrate shall record by means of such device all of the call after the caller informs the . . . magistrate that the purpose of the call is to request a warrant. Otherwise a stenographic or longhand verbatim record shall be made. . . ."

In *United States v. Stefanson*, 648 F.2d 1231, 1232-33 (9th Cir. 1981), the magistrate taped his conversation with an agent seeking a warrant, but placed the agent under oath at the end of the conversation, rather than immediately after the agent requested the warrant, as required by rule 41. The magistrate also did not record the oath, due to machine failure or accidental erasure. The defendant moved to suppress the evidence. An evidentiary hearing was held at which the magistrate testified in specific detail about his conversation with the officer and the taping of the oath. The court accepted the magistrate's testimony and affirmed the order denying suppression. It held that the violation of rule 41 was "only technical, and since the warrant was supported by an oath of the affiant, the Fourth Amendment warrant requirement was substantially satisfied." *Stefanson*, at 1235.

In *United States v. Johnson*, 641 F.2d 652 (9th Cir. 1980), Officer Lucchesi asked United States Attorney Peterson's permission to obtain a federal search warrant. Peterson called the magistrate and requested a warrant. The magistrate spoke with Officer Lucchesi and issued the warrant. The magistrate recorded his call to Lucchesi, but not Peterson.

The defendant alleged that evidence seized pursuant to the warrant must be suppressed because the magistrate did not record Peterson's phone call requesting the warrant. The court agreed that the magistrate did not comply with the recording requirements of rule 41, but held that this "non-fundamental noncompliance with Rule 41" did not require suppression because "[a] full account of the probable cause affidavit was recorded and preserved for later examination", thus, Johnson's Fourth Amendment interests were protected. *Johnson*, at 657.

Several state courts have addressed Fourth Amendment claims based on violations of rules similar to our CrR 2.3. These courts agree that magistrates and persons seeking telephonic warrants must adhere to the rules

governing issuance of these warrants because compliance: (1) facilitates judicial review, *State v. Fox*, 93 Or. App. 565, 567, 763 P.2d 186, 187 (1988); (2) compels respect for, and observance of, the constitutional guaranties of the Fourth Amendment, *State v. Habbena*, 372 N.W.2d 450, 457 (S.D. 1985); (3) preserves judicial integrity, *People v. Sanchez*, 131 Cal. App. 3d 323, 182 Cal. Rptr. 430, 434 (1982); and (4) removes any hint of misconduct or bad faith by the prosecutor or the police. *State v. Hadd*, 127 Ariz. 270, 619 P.2d 1047, 1051-52 (1980); *cf. State v. Fariello*, 71 N.J. 552, 366 A.2d 1313, 1317-20 (1976).

Generally, the courts overlook a violation of the rules governing telephonic affidavits, or allow parties to remedy noncompliance through reconstruction, if an irregularity does not impair review of the trial court's probable cause determination. *Hadd*, 127 Ariz. at 274. *See People v. Crandall*, 108 A.D.2d 413, 489 N.Y.S.2d 614, 617-18 (1985) (failure to record portion of conversation with officer in which judge verified informant's indentity and to record oath that parties admit was administered are "technical" defects that do not impair integrity and protection of the warrant process), *aff'd*, 120 A.D.2d 994, 501 N.Y.S.2d 547 (1986), *aff'd*, 69 N.Y.2d 459, 508 N.E.2d 657 (1987); *State v. Fox*, 93 Or. App. at 568 (failure to record part of conversation with officer did not require suppression because taped portion of conversation included the officer's oath and entire affidavit that alone established probable cause). *State v. Mead*, 120 Ariz. 108, 584 P.2d 572, 574 (1978) (magistrate and police officer can testify at later hearing that the officer was placed under oath before making his statements, because the rest of the telephonic affidavit was accurately recorded). *See also State v. Habbena*, 372 N.W.2d 450, 457 (S.D. 1985).

Conversely, the courts will not tolerate procedural noncompliance that fundamentally compromises the "constitutional armory safeguarding citizens from unreasonable searches and seizures." *State v. Valencia*, 93 N.J. 126, 134, 459 A.2d 1149, 1153 (1983). If a magistrate

completely fails to record statements that support a telephonic warrant, or take those statements under oath, then this gross procedural deviation generally renders the warrant invalid. *Hadd,* 127 Ariz. at 274-75. *See State v. Valencia, supra* at 140 (failure to place officer under oath, make complete contemporaneous record of their conversation, and to prepare written warrant until after officer executed search constituted "material non-compliance" with the rules governing search warrants and deprived reviewing court of "a reliable basis for ascertaining precisely what the judge considered or found in granting the warrant application."); *State v. Boniface,* 26 Ariz. App. 118, 546 P.2d 843, 844, 846 (1976) (magistrate's failure to take telephonic statements under oath or to record those statements invalidated the warrant).[7]

We derive the following suppression of evidence principles from federal and state case law. Ideally, a recording of a telephonic affidavit will be made at the time the sworn statements are offered. Parties may reconstruct a recording, however, if the omission in the contemporaneous recording does not impair the reviewing court's ability to ascertain what the magistrate considered when he issued the warrant. The court may allow the parties to reconstruct an entire sworn statement only if detailed and specific evidence of a disinterested person, like the magistrate or court clerk, corroborates the reconstruction.

In this case, failure to record the entire conversation based upon which the magistrate authorized the warrant is a gross deviation from CrR 2.3. The magistrate did not take notes of the conversation and does not clearly recall the grounds upon which he concluded that probable cause existed to issue the warrant. It is impossible to accurately

---

[7]We also note *State v. Liesche,* 228 N.W.2d 44, 47-48 (Iowa 1975), in which the court held that the magistrate's failure to abstract oral statements and endorse warrant application, forcing parties to depend on "poor memory of judge" concerning officer's testimony, created an "intolerable situation" at the suppression hearing and required suppression of evidence. *Liesche* is factually distinguishable from the instant case, but its comment on the dangers of relying on fallible human memory are germane.

review what the judge considered or found when he issued the warrant to search Myers' house and premises. The only evidence of the telephonic affidavit is the police officers' testimony, offered 4 months after the event, and Officer Hiles' report, made after the search occurred and after the tape that could establish the accuracy of the report was lost. This is not sufficient. We do not presume that any party in this case abused the procedures that govern telephonic warrants, but:

> [W]e cannot be unmindful of the possibility that an over-zealous law enforcement officer may, subconsciously . . ., be tempted to rectify any deficiency in his testimony before the issuing judge by post-search repair . . ..

*Fariello*, 71 N.J. at 561-62.

We conclude that the "reconstruction" of the affidavit offered at the suppression hearing did not safeguard Myers' rights under the Fourth Amendment and Const. art. 1, § 7 because it impaired this court's ability to review the basis of the magistrate's probable cause determination. Evidence seized pursuant to the "reconstructed" affidavit must be suppressed.

The State alleges, however, that evidence not seized pursuant to the warrant, but seized pursuant to the "open view" and "plain view" doctrines is admissible. We agree.

## OPEN VIEW

██ An officer who approaches a residence in connection with an investigation, from a common access route, does not violate the resident's reasonable expectation of privacy. *State v. Petty*, 48 Wn. App. 615, 619-20, 740 P.2d 879, *review denied*, 109 Wn.2d 1012 (1987). Further, a front porch or normal access to a house is not a constitutionally protected area, and police officers who enter these areas may do so with their eyes open. *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981). In this case, the officers approached Myers' house in connection with an investigation and stood on the front porch, the conven-

tional means of access to the residence. The officers were legitimately on the premises and their presence did not violate the state or federal constitution.

Something detected by an officer's senses, from a nonintrusive vantage point, is in "open view". *Seagull*, at 902. The government agent may be "on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public." *Seagull*, at 902. The exposed object is not "subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution." *Seagull*, at 902. Detection of an exposed object from a nonintrusive vantage point does not constitute a "search" within the meaning of the Fourth Amendment. *Seagull*, at 901. If the officer substantially or unreasonably departs from a nonintrusive area, or employs a particularly intrusive method of viewing, he may exceed the scope of "open view". *Seagull*, at 903. Determining whether an officer exceeded the scope of "open view", we consider several factors, including whether the officer: (1) spied into the house; (2) acted secretly; (3) approached the house in daylight; (4) used the normal, most direct access route to the house; (5) attempted to talk with the resident; (6) created an artificial vantage point; and (7) made the discovery accidentally. *Seagull*, at 905.

The officers in this case approached Myers' home during daylight, by a direct access route. They spoke with him from the porch, a public area. They did not "spy" or act secretive. The odor of burning marijuana and view of the cigarette rolling machine were fortuitous. Officers Hiles and Laschied merely observed "that which was there to be seen," which Myers left exposed to public view. *State v. Vonhof*, 51 Wn. App. 33, 39, 751 P.2d 1221, *review denied*, 111 Wn.2d 1010 (1988), *cert. denied*, 488 U.S. 1008 (1989). The odor of marijuana and the cigarette rolling machine were in "open view", could be seized without a warrant, and were properly admitted into evidence.

## PLAIN VIEW

■ After the officers entered Myers' home they saw a burning marijuana cigarette, cigarette rolling papers, and a "roach" clip. These items were seized *after* the officers entered an area in which Myers maintained a reasonable expectation of privacy. They, therefore, are not admissible under the "open view" doctrine, but may be admissible under the "plain view" doctrine. *Seagull*, 95 Wn.2d at 901. The "plain view" doctrine is an exception to the Fourth Amendment's warrant requirement that applies *after* police intrude into an area in which there is a reasonable expectation of privacy. *State v. Daugherty*, 94 Wn.2d 263, 267, 616 P.2d 649 (1980), *cert. denied*, 450 U.S. 958 (1981). Under the plain view doctrine, an officer must: (1) have a prior justification for the intrusion; (2) inadvertently discover the incriminating evidence; and (3) immediately recognize the item as contraband. *State v. Kennedy*, 107 Wn.2d 1, 13, 726 P.2d 445 (1986). A resident's consent to enter his home constitutes "prior justification for the intrusion" into an area in which there is a reasonable expectation of privacy. *State v. McAlpin*, 36 Wn. App. 707, 714, 677 P.2d 185, *review denied*, 102 Wn.2d 1011 (1984). Discovery is inadvertent if the officer "discovered the evidence while in a position that does not infringe upon any reasonable expectation of privacy, and did not take any further unreasonable steps to find the evidence from that position." *State v. Patterson*, 37 Wn. App. 275, 281, 679 P.2d 416, *review denied*, 103 Wn.2d 1005 (1984). The requirement that a discovery be inadvertent does not mean that an officer must act with a completely neutral, benign attitude when investigating suspicious activity. *Patterson*, at 280. The State established, with clear and convincing evidence, that Myers voluntarily consented to the officers entering his home. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990). We note that the officers read Myers his *Miranda* rights before he consented, Myers' statements to the officers show that he was aware of his right to refuse entry, there

is no evidence that Myers was of limited education or intelligence, and no evidence of coercion. *See State v. Shoemaker*, 85 Wn.2d 207, 211-13, 533 P.2d 123 (1975). Because Myers consented to the officers entering his home, they had a prior justification for their intrusion. The officers' discovery was "inadvertent". They did not take further unreasonable steps to find the contraband: the items were on a table in the room by which the officers passed at Myers' invitation. The officers immediately recognized the items as contraband. The officers did not violate the "plain view" doctrine when they seized the marijuana cigarette, "roach" clip, and cigarette papers in Myers' living room. These items were properly admitted into evidence at trial.

### OTHER ISSUES

Myers also alleges that the warrant issued is overly broad and that reconstructing the telephonic affidavit violated due process under article 1, section 3 of our State Constitution and the Fifth Amendment. Because we have concluded that evidence seized pursuant to the warrant must be suppressed and that a reconstruction which impairs the court's ability to review the probable cause determination does not safeguard defendant's constitutional rights, we will not address these claims.

### CONCLUSION

1. Parties may reconstruct sworn telephonic testimony at a later hearing, based on the testimony of witnesses including police officers, only if the reconstruction does not impair the reviewing court's ability to assess what evidence the magistrate considered and found when he determined probable cause existed.

2. Evidence seized pursuant to a telephonic warrant must be suppressed if failure to record the sworn statements deprives the court of a record sufficient to review the magistrate's probable cause determination.

3. We hold that the odor of marijuana and the cigarette rolling machine are admissible because they were in open

view. The cigarette papers, marijuana cigarette, and "roach" clip are admissible because they were in plain view.

4. The trial court erred when it admitted evidence seized pursuant to the telephonic warrant, including the scales, Ziploc bags, memo with drugs, accounts book, and cash. This evidence must be suppressed because there is not a sufficient record of the magistrate's probable cause determination.

5. Defendant's conviction of possession of a controlled substance with *intent to deliver* is reversed and dismissed.

UTTER, DOLLIVER, SMITH, GUY, and JOHNSON, JJ., concur.
BRACHTENBACH, ANDERSEN, and DURHAM, JJ., concur in the result.