[No. 79969-5.   En Banc.]
Argued June 12, 2007.     Decided September 27, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID GARRETT REEP, *Appellant*.

*Robert J. Thompson* and *Lenell R. Nussbaum*, for appellant.

*Steven M. Lowe, Prosecuting Attorney*, and *Frank W. Jenny II, Deputy*, for respondent.

¶1 SANDERS, J. — David Reep was convicted of four counts of voyeurism in violation of RCW 9A.44.115(2)(a)[1] for taking pictures of children playing in the fenced backyards of Mr. Reep's neighbors. He appeals his convictions,

---

[1] RCW 9A.44.115(2)(a) provides,

contending (1) the State's first search warrant violated the Fourth Amendment's requirement for particularity[2]; (2) the second (telephonic) search warrant violated the Fourth Amendment's requirement for particularity and, alternatively, was invalid because the application for the warrant was not recorded; (3) RCW 9A.44.115 is unconstitutionally vague as applied to Mr. Reep's conduct; (4) RCW 9A.44.115 is unconstitutionally overbroad; and (5) the trial court erroneously concluded the photographed children were located in a place where they had a "reasonable expectation of privacy" within the meaning of RCW 9A.44.115(1)(c)(ii).

¶2 We hold the second search warrant, resulting in the seizure of the photographs supporting Mr. Reep's voyeurism convictions, violates the Fourth Amendment's requirement for particularity. Accordingly, the evidence seized pursuant to that warrant must be suppressed and Mr. Reep's convictions for voyeurism reversed.

## FACTS

¶3 On June 11, 2004, emergency personnel responded to an explosion and fire in the backyard of the Reep residence. The residence is home to Irvin and Charlotte Reep and their adult son, David Reep. David Reep was present and had severe burns on his hands that required treatment at the

---

A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:

(a) Another person without that person's knowledge and consent while the person being viewed, photographed or filmed is in a place where he or she would have a reasonable expectation of privacy.

A " '[p]lace where he or she would have a reasonable expectation of privacy' means":

(i) A place where a reasonable person would believe that he or she could disrobe in privacy, without being concerned that his or her undressing was being photographed or filmed by another; or

(ii) A place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance.

RCW 9A.44.115(1)(c).

[2] Mr. Reep does not allege a violation of article I, section 7 of our state constitution.

hospital. The police noted items associated with the manufacture of methamphetamine in the backyard of the residence. The area was sealed off pending application for a search warrant and arrival of a methamphetamine cleanup team.

¶4 On the evening of June 11, 2004, Detective Jason Mayse spoke to Mr. Reep's parents. The Reeps were informed the fire had appeared to result from a methamphetamine manufacturing process. They told Detective Mayse that upon their return from dinner they smelled a strong chemical odor throughout the residence. Detective Mayse asked the Reeps if they would show him David Reep's bedroom; he said he planned to do a cursory search for methamphetamine-related items for safety purposes. The Reeps walked Detective Mayse through the residence, and Detective Mayse said he would include David Reep's bedroom in the search warrant. During his cursory search on the evening of June 11, Detective Mayse did not inspect the computer in David Reep's bedroom.

¶5 Detective Mike Nelson applied for and obtained a telephonic search warrant for the backyard of the residence and David Reep's bedroom from Judge Carolyn Brown. On June 12, 2004, a team of officers arrived to execute the search warrant and clean up the methamphetamine lab. While executing the search warrant in David Reep's bedroom, Detective Mayse found a "collage" of cut-out magazine pictures of young girl models, including a "naked picture of a young female." Pl.'s Ex. D at 2. Detective Mayse proceeded to look at items saved on the computer in David Reep's room, initially looking for a methamphetamine recipe or other items relating to violations of the Uniform Controlled Substances Act, chapter 69.50 RCW. After seeing several images[3] on the computer he considered suspicious of criminal activity unrelated to violations of the

---

[3] Detective Mayse described the pictures on David Reep's computer as "what appeared to be illicit photo's [sic] of young children with out their knowledge" and "pornographic pictures of young girls conducting sex acts that also appeared to be graphically simulated." Pl.'s Ex. D at 2.

Uniform Controlled Substances Act, Detective Mayse decided to shut down his search and apply for another telephonic search warrant.

¶6 Detective Mayse prepared a script for his telephonic search warrant application. He then recontacted Judge Brown by phone and applied for another telephonic search warrant by reading from his prepared script. Judge Brown orally authorized a second search warrant. Pursuant to that authorization, Detective Mayse prepared a telephonic search warrant form.

¶7 Due to technical difficulties, the conversation between Detective Mayse and Judge Brown never recorded. Detective Mayse saved the script he read to Judge Brown in applying for the warrant. The State has stipulated Judge Brown has no current recollection of the contents of Detective Mayse's telephonic search warrant application.

¶8 David Reep was charged with one count of unlawful possession of controlled substance with intent to deliver. He pleaded guilty and was sentenced for that charge. Subsequent to his guilty plea and sentencing, David Reep was charged with four counts of voyeurism in violation of RCW 9A.44.115(2)(a). Such charges resulted from several photographs of four young girls taken by David Reep and saved on his computer. The copies of the photographs from the record are of poor quality so the images are blurry and undefined. They appear to depict young children, fully clothed and engaging in unremarkable activities such as sitting on trampolines or walking near basketball hoops in the fenced backyards of Mr. Reep's neighbors' homes. The photographs were taken from a distance so the images of the children themselves are quite small.

¶9 All of the photographs were taken without the knowledge and consent of the persons photographed. Clerk's Papers (CP) at 47 (Stipulated Fact No. 3). David Reep admitted the photographs were taken for the purpose of arousing or gratifying his sexual desire. *Id.* (Stipulated Fact No. 2). He took all of the photographs from the premises of his parents' residence, where he was living at the time. CP at

48 (Stipulated Fact No. 5). Three were taken from his parents' driveway, three were taken from his parents' garage, and one was taken from the Reeps' second floor bedroom window. *Id.* The children photographed were located in the backyards behind the three residences immediately north of the Reep residence on the same side of the street. *Id.* (Stipulated Fact No. 7). The backyards of the three residences are enclosed by one six-foot-high, solid wood fence. *Id.* (Stipulated Fact No. 8). The middle yard is separated from the two adjoining yards by chain link fencing, such that the three yards are visible to one another and resemble a single enclosed "compound."

¶10 Following a bench trial on stipulated facts, the trial judge found David Reep guilty of all four counts of voyeurism. David Reep appealed, and pursuant to RAP 4.4, his appeal was transferred from Division Three of the Court of Appeals to this court.

## ISSUE

¶11 Because this case can be resolved on one issue only—whether the second search warrant violates the Fourth Amendment's requirement for particularity—we do not address Mr. Reep's remaining claims. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000).

## STANDARD OF REVIEW

¶12 "Whether a warrant meets the particularity requirement of the Fourth Amendment is reviewed de novo." *State v. Clark*, 143 Wn.2d 731, 753, 24 P.3d 1006 (2001).

## ANALYSIS

¶13 "The Fourth Amendment mandates that warrants describe with particularity the things to be seized." *State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993).

Specifically, the Fourth Amendment provides, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Conformance with the particularity requirement "eliminates the danger of unlimited discretion in the executing officer's determination of what to seize." *State v. Perrone*, 119 Wn.2d 538, 546, 834 P.2d 611 (1992). "The underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely." *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir. 1976).

¶14 The search warrant at issue authorized seizure of any evidence supporting the suspected criminal activity of "Narcotics/Child Sex." Pl.'s Ex. C. Specifically, the warrant provides:

> Jason Mayse of the Pasco Police Department stating under oath that he has probable cause to believe that certain evidence to the crime of: Narcotics/Child Sex, namely:
>
> Muratic Acid, Tulane, Metal Bowls, Burners, Glassware, And Other Precursors Consist [sic] With The Production Of Meth; And Any Data Storage Devices to Include A Computer And Its Hardware, Compact Discs, Floppy Discs, Portable Storage Units Such As USB [universal serial bus] Accessible Devices, Digital Cameras, Video Cameras, Photographs, Any Documentation of Criminal Activity By the Suspect And Other Evidence Not Listed that Support the Suspected Criminal Activity.

*Id.*

¶15 In *Perrone*, 119 Wn.2d at 542, the defendant was charged with one count of dealing in depictions of minors engaged in sexually explicit conduct, RCW 9.68A.050(2), and one count of possession of depictions of minors engaged in sexually explicit conduct, RCW 9.68A.070. The defendant challenged the validity of the search warrant authorizing seizure of " '[c]hild or adult pornography.' " *Perrone*, 119 Wn.2d at 543.

¶16 The *Perrone* court struck down the warrant for insufficient particularity, noting "child pornography, like

obscenity, is expression *presumptively protected* by the First Amendment." *Id.* at 550 (emphasis added) (citing *United States v. Hale*, 784 F.2d 1465, 1469 (9th Cir. 1986)). And "[w]here a search warrant authorizing a search for materials protected by the First Amendment is concerned, the degree of particularity demanded is greater than in the case where the materials sought are not protected by the First Amendment." *Id.* at 547. Stated another way, such warrants must follow the Fourth Amendment's particularity requirement with " 'scrupulous exactitude.' " *Id.* at 548 (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 85 S. Ct. 506, 13 L. Ed. 2d 431 (1965)).

¶17 Per the United States Constitution's demand for increased particularity, this court pronounced the term " 'child . . . pornography' " invalid for insufficient particularity as it left the officer with too much discretion in deciding what to seize under the warrant. *Id.* at 553 (alteration in original). The court observed the term "is an 'omnibus legal description' and is not defined in the statutes." *Id.* Furthermore, reasoned the court, " 'child . . . pornography' " is analogous to " 'obscenity,' " a term insufficiently particular to satisfy Fourth Amendment standards. *Id.*

¶18 Turning to the search warrant in the present case, the fictitious crime of "child sex" is even broader and more ambiguous than the term "child . . . pornography."[4] Consequently, the warrant allows the officer unbridled discretion to decide what things to seize and, most critically, permits the seizure of items which may be constitutionally protected, such as pornographic drawings of children. *Id.* at 551. As such, the warrant at issue fails for insufficient particularity.

---

[4] The State counters that state law defines "many specific crimes dealing with inappropriate sexual behavior involving children" and therefore "the warrant did not authorize the seizure of any documents that were not evidence of criminal activity." Br. of Resp't at 14-15. "The police could not search for any evidence that did not relate to child sex." *Id.* at 16. This argument does not aid the State's position as it only exaggerates the second warrant's impermissible lack of particularity.

¶19 The State contends that even if the second warrant is invalid for particularity, the evidence should not be suppressed because "[a]s a practical matter, the second warrant did not expand the scope of the search" and that the "first search warrant . . . authorized the search of everything in Mr. Reep's bedroom, including his personal computer." Br. of Resp't at 26-27. The State continues, "[i]t is not . . . necessary for officers to discontinue a search and apply for another warrant when they encounter evidence of a crime other than the one originally being investigated." *Id.* (citing *State v. Olson*, 32 Wn. App. 555, 558-59, 648 P.2d 476 (1982)).

¶20 In *Olson*, 32 Wn. App. at 559, the Court of Appeals concluded that because officers were authorized to search for marijuana pursuant to a valid search warrant, they "were authorized to inspect virtually every aspect of the premises" and "[a]ny other contraband inadvertently found in the course of such lawful search would clearly be subject to seizure pursuant to the 'plain view' doctrine." *Id.* at 558-59. The "plain view" doctrine is an exception to the warrant requirement. *State v. Kull*, 155 Wn.2d 80, 118 P.3d 307 (2005). "The requirements for plain view are (1) a prior justification for intrusion, (2) inadvertent discovery of incriminating evidence, and (3) immediate knowledge by the officer that he had evidence before him." *Id.* at 85. "The second prong, inadvertent discovery, is no longer a requirement to establish the plain view exception under the Fourth Amendment." *Id.* at 85 n.4.

¶21 The State's argument that the evidence was properly seized pursuant to the "plain view" exception is unpersuasive. First, this court has not addressed the question of "what constitutes 'plain view' in the context of computer files," *United States v. Carey*, 172 F.3d 1268, 1273 (10th Cir. 1999), and since the parties have not briefed the issue, this is not an opportune case in which to resolve it. Second, the evidence supporting Mr. Reep's convictions for voyeurism was *not* seized by Detective Mayse pursuant to the "plain view" exception while he searched the premises

pursuant to the first search warrant. Instead, the evidence was seized while Detective Mayse was operating under the invalid *second* search warrant authorizing seizure of all items related to "child sex."

## CONCLUSION

¶22 Evidence seized pursuant to the second search warrant must be suppressed. *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999). Mr. Reep's convictions are reversed.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶23 J.M. JOHNSON (concurring) — I concur with the majority's conclusion that David Reep's voyeurism convictions must be reversed.[5] However, I would hold the second warrant was invalid for failure to comply with constitutional requirements and with our rule providing for telephonic warrants. CrR 2.3(c).

¶24 The Fourth Amendment to the United States Constitution provides, "no warrants shall issue, but upon probable cause, supported by oath or affirmation." These protections are also found in the Washington Constitution, article I, section 7: "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Both of these provisions require the State, when seeking a search warrant, to present to a neutral magistrate the facts establishing probable cause. *State v. Myers*, 117 Wn.2d 332, 337, 815 P.2d 761 (1991). The constitutional provisions require that only an independent magistrate may make the probable cause determination and issue a warrant. *Id*.

¶25 The warrant requirements serve an important purpose by separating from the police officer executing a search

---

[5] Mr. Reep also pleaded guilty to the unlawful possession of a controlled substance and has served that sentence.

the power to decide whether the search is justified. That power must be exercised by a detached magistrate. Two branches of government must agree before a citizen or his residence may be forcibly searched, thus minimizing the risk of abuse. *See United States v. Karo*, 468 U.S. 705, 717, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984) ("The primary reason for the warrant requirement is to interpose a 'neutral and detached magistrate' between the citizen and 'the officer engaged in the often competitive enterprise of ferreting out crime.'" (quoting *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948))).

¶26 However, courts are mindful of the occasional need to allow an immediate search warrant, especially to stop a crime or preserve evidence, which may vanish or be destroyed. For this reason, the presentation supporting probable cause need not always be in person and "may be an electronically recorded telephonic statement." CrR 2.3(c). To allow a challenge and review of such a warrant's sufficiency, a recording of the statement made or a duplicate must be part of the court record. *Id.* If a warrant is challenged, evidence seized based on a telephonic warrant must be suppressed if "the failure to record sworn statements deprives the appellate court of a record sufficient to review the magistrate's probable cause determination." *Myers*, 117 Wn.2d at 334.

¶27 The duplicate of a missing recording may be a written reconstruction of the entire sworn statement. *Id.* at 343. Nevertheless, the reconstruction is valid only if a disinterested person—nearly always the magistrate—corroborates. *Id.* This magistrate corroboration may be by written notes taken during or immediately after the telephone conversation if no recording exists; but it must be the magistrate, and not the person seeking the warrant, who corroborates the conversation. *See id.* at 342-43 ("If a *magistrate* completely fails to record statements that support a telephonic warrant . . . , then this gross procedural deviation generally renders the warrant invalid." (emphasis added)).

¶28 In *Myers*, an officer went to the defendant's house after receiving a tip that the defendant was selling drugs. *Id*. at 334. The officer asked the defendant if he could search the house. *Id*. The defendant refused, and so the officer had recording equipment sent to the house and called a judge to obtain a warrant. *Id*. at 334-35. After hearing the officer's sworn testimony, the judge granted a warrant to search the house. *Id*. at 335.

¶29 Unfortunately, the recording machine malfunctioned and the recording of the conversation was lost. *Id*. On learning this the next day, the officer wrote down the conversation as he recalled it. *Id*. The judge did not, and when the defendant moved to suppress the evidence, the judge testified he did not accurately recall the conversation. *Id*. at 335-36.

¶30 When the issue reached this court, we suppressed the evidence seized, holding that the officer's reconstruction satisfied neither the telephonic recording rule nor constitutional standards. *Id*. at 333-34. The court would have overlooked minor deviations from the recording rule, provided the "irregularity does not impair review of the trial court's probable cause determination." *Id*. at 342. Since the judge had no independent recollection of the conversation, this court could not review his probable cause determination and so ordered the evidence suppressed. *Id*. at 343-44.

¶31 Here, Detective Jason Mayse may well have acted correctly. Not only did he seek judicial review before executing a search, he prepared a script for his telephone application to the issuing magistrate. This is entirely appropriate when seeking a telephonic warrant. However, the magistrate here had *no recollection* of the telephone conversation. This prevents us from reviewing the probable cause determination, and this requires suppression of the evidence from the search.

¶32 I would hold that the trial court erred when it held the officer's reconstruction alone sufficient to give an appellate court the ability to review the magistrate's decision. Clerk's Papers at 199 (Conclusion of Law 7). This error is

twofold. First, one reason for telephonic recording is to assure an appellate court can review the magistrate's analysis or conclusion and not simply to review what evidence the officer presented to justify the warrant. Second, a hurried officer with later gathered evidence (from the search) could erroneously reconstruct a conversation to support probable cause. Allowing the person seeking a warrant to reconstruct the basis for probable cause undermines the power-checking function of the warrant requirements. Each magistrate must assure there is some record of his or her recollections of the evidence presented to support the warrant.

¶33 Since Judge Brown did not recall the conversation here, the warrant does not comply with either CrR 2.3 or constitutional requirements. Therefore, the evidence seized must be suppressed.[6] Since Mr. Reep's conviction was based on that evidence, his convictions for voyeurism should be reversed.

CHAMBERS, J., concurs with J.M. JOHNSON, J.

[No. 200,428-8. En Banc.]
Argued May 17, 2007.     Decided October 4, 2007.

---

[6] My conclusion logically precludes the need to decide whether the warrant described the things to be seized with sufficient particularity. However, were I to reach the issue, I would fully concur with the majority's analysis.