IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34154-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JON L. SOUZA, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Jon Souza appeals his convictions for possession of a controlled

substance and use of drug paraphernalia by challenging the constitutionality of a police

dog's sniff of his truck. We uphold the constitutionality of the sniff and affirm Souza's

convictions.

## FACTS

This factual statement mixes testimony from hearings on motions to suppress

evidence and a bench trial. On August 8, 2015, defendant Jon Souza traveled north, on

Republic's Clark Street, in a gray truck. No passengers rode in the truck.

Simultaneously, Republic Police Sergeant Loren Culp performed routine traffic patrol

alongside South Clark Street near the Beaver Trap store. The speed limit was 25 m.p.h.

When Souza passed Sergeant Culp's location, the patrol car's radar clocked Souza's speed at 35 m.p.h. Souza looked directly at Culp and continued driving.

Sergeant Loren Culp yielded to another vehicle traveling a few car lengths behind Jon Souza, before Culp entered the traffic on Clark Street. Culp did not activate his patrol lights because the street afforded no safe place for vehicles to park. Culp intended to stop Souza at a NAPA store parking lot, several blocks ahead. When Culp crested the small hill between Beaver Trap and the NAPA store, he lost sight of Souza's truck. Culp expected to observe Souza around the next corner on Clark Street, but his expectation failed. Culp knew that, if Souza drove at the speed limit, Souza would have remained in Culp's view, so Sergeant Culp concluded that Souza attempted to evade him. Culp sped and espied Souza several blocks forward on the north end of Keller Street. Culp actuated his emergency lights and pursued Souza. With Loren Culp in pursuit, Souza turned from Keller Street to Klondike Street and then onto Thornton Drive and into a hospital parking lot. Culp also stopped his patrol car in the parking lot.

Sergeant Loren Culp worried for his safety as he exited his patrol car and marched to Jon Souza's truck. Culp's singularity and Souza's evasion heightened Culp's concern. When Culp approached Souza's vehicle, Culp directed Souza to show his hands. Souza rested his hands outside the window. Culp next ordered Souza to exit the vehicle. Culp handcuffed Souza, frisked him for weapons, and deposited him on the bumper of his

2

patrol car. Before reading Souza his Miranda rights, Culp asked Souza why he attempted to avoid the traffic stop. Souza denied any eluding.

Republic Police Sergeant Loren Culp next requested Jon Souza's driver's license, vehicle registration form, and proof of insurance. According to Culp, patrol officers always request these three documents during a routine traffic stop. Souza responded that his backpack, located in the front seat of his truck, contained his license. Souza bestowed Sergeant Culp permission to retrieve the license from the backpack. Culp escorted Souza to the passenger side door, and Souza identified which backpack pocket contained the license. Souza volunteered that the State suspended his driver's license, that his vehicle was not registered, and that he lacked car insurance.

Sergeant Loren Culp asked Jon Souza if his truck contained drugs. Souza replied in the negative.

Sergeant Loren Culp called Officer Marcuson for back-up. On confirmation from dispatch that Souza's license was suspended, Sergeant Culp arrested Souza for driving with his license suspended in the third degree and for failure to transfer title. Culp then read Souza his Miranda rights. Souza told Culp that he did not want to speak.

Officer Marcuson arrived at the hospital parking lot after Jon Souza's arrest. Marcuson searched Souza incident to arrest and sat him in Marcuson's patrol car. While Marcuson secured Souza, Culp walked his police dog, Isko, around Souza's vehicle. Law enforcement trained Isko to "alert" when he detects the presence of marijuana,

3

heroin, methamphetamine, cocaine or ecstasy. Isko signaled the presence of a controlled substance at the driver's side door of Souza's truck. As a result of Isko's signal, Culp impounded Souza's vehicle and applied for a search warrant. Marcuson transported Souza to jail.

Sergeant Loren Culp's search warrant affidavit described the events detailed above, as well as his and canine Isko's training. The State of Washington trained and certified Isko for law enforcement work before the effective date of Initiative 502, which legalized limited amounts of marijuana. Isko learned to detect the presence of marijuana, heroin, methamphetamine, crack cocaine, cocaine, and ecstasy, including miniscule amounts of these substances. Isko, however, cannot communicate what substance he detects or whether the detected substance is present as a residue or in a measurable quantity. Despite these limitations, Culp averred in his affidavit that Isko's alert provided probable cause to believe that evidence of a violation of a Uniform Controlled Substances Act, chapter 69.50 RCW may be found in Souza's vehicle.

The district court judge granted Sergeant Loren Culp's application for a search warrant. Culp searched Jon Souza's impounded vehicle and located a box in the glove compartment. The box contained three pipes commonly used to smoke methamphetamine. The box also contained a small plastic bag with a substance that looked like methamphetamine. Sergeant Culp sent the plastic bag and its contents to the Washington State Patrol Crime Laboratory for testing. Forensic scientist Steven Reid

tested the contents and concluded it was methamphetamine.

PROCEDURE

The State of Washington charged Jon Souza with possession of a controlled substance, use of drug paraphernalia, driving while license suspended or revoked in the third degree, and failure to transfer title within 45 days after date of delivery. Prior to trial, Souza moved on two occasions to suppress evidence of the controlled substance and paraphernalia that Sergeant Loren Culp seized from Souza's vehicle. During the first suppression hearing, Souza argued that using a trained canine dog to sniff a vehicle constituted an unlawful search. During the second hearing, Souza contended that the dog sniff did not support the issuance of a search warrant. The trial court denied both motions.

Jon Souza later moved to suppress the statements he made to Sergeant Culp. The trial court denied the motion, except with regard to Souza's answer to Culp's question of whether Souza possessed drugs in the car.

The trial court conducted a bench trial. The court found Jon Souza guilty of possession of a controlled substance, possession of drug paraphernalia, and driving with a suspended license. The court dismissed, for insufficient evidence, the charge of failure to transfer a vehicle title. In its findings of fact 1.4, the trial court determined:

> Detective Culp activated his emergency lights and increased speed to overtake the defendant's vehicle. The detective soon contacted the defendant *after the pickup sped into the hospital parking lot and made a*

5

No. 34154-2-III
*State v. Souza*

*quick stop.* Detective Culp approached the vehicle and observed only one occupant, namely the defendant. *Drawing his service weapon*, Detective Culp ordered the defendant to show his hands. Defendant complied, after which Detective Culp ordered defendant from the vehicle, frisked his person for weapons, then placed him on the push bar on the front of his patrol vehicle.

Clerk's Papers at 129 (emphasis added). Jon Souza appeals only his two possession charges.

## LAW AND ANALYSIS

### Finding of Fact 1.4

Jon Souza first contends that no facts support two passages in the trial court's finding of fact 1.4. The first passage declares that Souza sped into the hospital parking lot and quickly stopped. The second passage states that Detective Loren Culp drew his service weapon. Souza does not discuss, in his brief, this alleged error or cite to any authority. The State does not respond to the assignment of error.

This court does not review errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Meeks v. Meeks*, 61 Wn.2d 697, 698, 379 P.2d 982 (1963); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012). Appellate courts are precluded from considering such alleged errors. *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 689 n.4, 974 P.2d 836 (1999); *Escude v. King County Public Hospital District No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003).

6

RAP 10.3(a)(6) directs each party to supply, in his brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Department of Labor & Industries*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). Therefore, we decline to address this assignment of error. We also note that the claimed erroneous passages in the finding of fact bear no import in our decision.

## Dog Sniff

Jon Souza appeals the trial court's order denying his motion to suppress evidence seized from his vehicle with a search warrant obtained after police used a narcotics dog to determine whether drugs were present in the vehicle. Souza focuses on whether a dog sniff constitutes a search. He argues the dog sniff was an unconstitutional search and, absent the sniff, the remaining facts in the search warrant affidavit do not create probable cause. Souza characterizes the canine smell as an unreasonable governmental intrusion into his automobile and its contents. Accordingly, Souza claims the trial court erred in denying his motion to suppress the drugs and paraphernalia garnered from his vehicle's glove box pursuant to the search warrant.

The State contends that Sergeant Loren Culp needed no warrant to direct Isko to sniff Jon Souza's truck. The State characterizes the dog smell as reasonable and non-intrusive. We agree with the State.

Jon Souza challenges the dog smell only under the state constitution. According to federal law, a dog smell does not constitute a search under the United States Constitution's Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005); *United States v. Jensen*, 425 F.3d 698, 706 n.2 (9th Cir. 2005).

Washington's Constitution provides: "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. The unique language of article I, section 7, generally provides greater protection to persons under the Washington Constitution than the Fourth Amendment of the federal constitution provides. *State v. Snapp*, 174 Wn.2d 177, 187, 275 P.3d 289 (2012). The Washington Constitution provides added safeguards, in part, because, unlike the Fourth Amendment, article I, section 7 clearly recognizes an individual's right to privacy with no express limitations. *State v. Ferrier*, 136 Wn.2d 103, 110, 960 P.2d 927 (1998).

Searches conducted without prior approval by a judge or magistrate are per se unreasonable under article I, section 7 of the Washington State Constitution, subject only to a few established exceptions. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Since Sergeant Loren Culp garnered no search warrant before Isko's sniff of Jon

8

Souza's truck, we must decide whether a dog sniff constitutes a search under the state constitution. Since the Washington Constitution does not employ the word "search," the more apt question is whether a dog sniff unreasonably disturbs a citizen's private affairs. *State v. Boland*, 115 Wn.2d 571, 577, 800 P.2d 1112 (1990). Nevertheless, Washington cases still analyze whether law enforcement conducted a search.

When a law enforcement officer can detect something by using one or more of her senses while being lawfully present at a vantage point, the detection does not constitute a search. *State v. Seagull*, 95 Wn.2d 898, 901, 632 P.2d 44 (1981). An officer's surveillance does not constitute a search if the officer observes an object or activity with an unaided eye from a nonintrusive location. *State v. Young*, 123 Wn.2d 173, 182, 867 P.2d 593 (1994). This means of surveillance does not expose a person's private affairs. *State v. Dearman*, 92 Wn. App. 630, 634, 962 P.2d 850 (1998). Nevertheless, a particularly intrusive method of viewing may constitute a search. *State v. Myers*, 117 Wn.2d 332, 345, 815 P.2d 761 (1991).

Canine Isko's search did not entail sight. Isko searched by his sense of smell. Sergeant Loren Culp lacked the acuity of smell to detect controlled substances in Jon Souza's truck.

Unlike the United States Supreme Court, Washington courts have not adopted a blanket rule regarding whether a dog sniff constitutes a search. Instead, Washington courts have adopted a situational approach that in part focuses on whether the dog's smell

9

intrudes into air emanating from a home or air oozing from an object outside the home.

Whether a dog sniff amounts to a search depends on the privacy rights at stake due to the

intrusion. *State v. Boyce*, 44 Wn. App. 724, 729, 723 P.2d 28 (1986). As long as the

canine sniffs an object from an area where the defendant lacks a reasonable expectation

of privacy and the canine is minimally intrusive, no search occurs. *State v. Boyce*, 44

Wn. App. at 730. A person lacks a reasonable expectation of privacy in the air outside of

a car window. *State v. Mecham*, 186 Wn.2d 128, 147, 380 P.3d 414 (2016).

Jon Souza contends that Isko's inhalation of methamphetamine molecules

unreasonably intruded in his privacy interest in his truck. In support of his contention,

Souza cites *State v. Young*, 123 Wn.2d 173 (1994) and *State v. Dearman*, 92 Wn. App.

630 (1998). Nevertheless, both of these cases involve a police investigation into a

defendant's home. The privacy implications of a person's home exceed the privacy

implications of a person's vehicle. The Washington Constitution grants heightened

protection of private dwellings. *State v. Dearman*, 92 Wn. App. at 633 n.5. As a result,

*Young* and *Dearman* lack relevance.

We consider *State v. Hartzell*, 156 Wn. App. 918, 237 P.3d 928 (2010)

controlling. *Hartzell* addressed whether a dog sniff of a motor vehicle constituted a

search. This court held that a dog smelling through an open window of a vehicle from a

lawful vantage point is not a search.

In *State v. Hartzell*, the police linked Charles Hartzell to an apartment shooting

10

where a witness saw someone shoot from the sun roof of a vehicle. Later, when responding to a call reporting a man with a gun, a law enforcement officer waited for backup outside the house. Hartzell arrived in a sports utility vehicle. The officer noticed a bullet hole through the passenger door of the vehicle. A canine officer later arrived with his dog in order to look for the gun that shot the bullet through the passenger side door of the vehicle. The dog jumped on the car and sniffed the passenger door. The dog then wandered down the road and found a semiautomatic handgun one hundred yards distant. On appeal, this court ruled that Hartzell lacked a reasonable expectation of privacy in the air coming from his vehicle. Hartzell was outside the vehicle when the dog sniff occurred and the sniff was minimally intrusive. Accordingly, the dog sniff was not a search requiring a warrant under article I, section 7 of the Washington Constitution.

We conclude that Jon Souza lacked a reasonable expectation of privacy in the air surrounding his vehicle in a public parking lot. Similar to *Hartzell*, Souza was not in the vehicle when canine Isko sniffed around it from a lawful vantage point. Isko's sniff was less intrusive than the police dog smell in *Hartzell*. Isko did not jump on the vehicle to smell the air coming from the window. Isko merely sauntered around the vehicle.

### Probable Cause for Search Warrant

Jon Souza next argues that, because of an unconstitutional dog sniff, insufficient evidence supported the issuance of the search warrant for his truck. Because we affirm the propriety of the sniff, we need not address this contention. Souza also argues that,

11

even assuming the constitutionality of Isko's smell of the truck, insufficient evidence supported issuance of the warrant because law enforcement trained Isko to alert to both legal and illegal substances and Isko might have only smelled a legal substance in the truck. Finally, Souza argues that Sergeant Loren Culp's affidavit did not support probable cause to search his truck because the affidavit lacked information about the accuracy of Isko's alerts or information about the dog's ongoing training.

The issuance of a search warrant is reviewed only for abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). Courts afford a magistrate's determination of probable cause great deference. *State v. Maddox*, 152 Wn.2d at 509; *State v. Clark*, 143 Wn.2d 731, 748, 24 P.3d 1006 (2001).

Article I, section 7 of our state constitution requires that a search warrant issue only upon a determination of probable cause by a neutral magistrate. *State v. Myers*, 117 Wn.2d at 337 (1991). Probable cause exists when facts and circumstances suffice to establish a reasonable inference that the defendant engages in criminal activity and that evidence of the criminal activity can be found at the place to be searched. *State v. Maddox*, 152 Wn.2d at 505. An affidavit supporting a search warrant must show criminal activity is at least probable. *State v. Ellis*, 178 Wn. App. 801, 805-06, 327 P.3d 1247 (2014). Evidence obtained from a warrant issued without probable cause should be suppressed under the fruit of the poisonous tree doctrine. *State v. Eisfeldt*, 163 Wn.2d 628, 640, 185 P.3d 580 (2008).

12

Jon Souza fleetingly argues that the dog sniff does not create probable cause because Isko was trained to alert to marijuana, among other drugs, and marijuana is now legal in the State of Washington. Accordingly, Souza contends that any information gleaned from Isko's alert could not, by its nature, be sufficient to establish an inference that Souza was involved in criminal activity. Souza contends Sergeant Loren Culp did not know if the drugs Isko detected were illegal. Souza cites no case law to support this contention. The State concedes that canines trained to "hit" on marijuana could lead to problematic search warrants when the warrant relies solely on the canine alert. The State, however, points out that Sergeant Culp forwarded other independent factors including his belief that Souza attempted to outrun him and Souza's denial of drugs in his truck.

In Washington, an alert by a trained drug dog is sufficient to establish probable cause for the presence of a controlled substance. *State v. Jackson*, 82 Wn. App. 594, 606, 918 P.2d 945 (1996). While we acknowledge that the State trained Isko to detect miniscule amounts of marijuana before the substance's legalization, such training does not disqualify his alert. As the State highlights, marijuana remains illegal for some persons and under some circumstances. More importantly, Sergeant Culp declared that he believed Jon Souza tried to elude him. When asked, Souza replied that his truck contained no drugs. Souza did not disclose the presence of a legal amount of marijuana in the vehicle. All of these factors combined equate to a reasonable probability that Souza's truck housed unlawful drugs.

13

When arguing about the lack of qualifications rendered for Isko, Jon Souza relies on *State v. Neth*, 165 Wn.2d 177, 196 P.3d 658 (2008). Souza argues that the *Neth* trial court excluded the dog sniff from the probable cause determination because the search warrant affidavit lacked information to establish the dog's reliability. The trial court's decision to exclude the dog sniff, however, was not at issue on appeal. The Washington State Supreme Court briefly mentioned the trial court's holding in the high court's procedural recitation and noted in parenthesis that "[t]he affidavit says only that the dog was '[t]rained to recognize the odor of illegal narcotics.'" *State v. Neth*, 165 Wn.2d at 181 (alteration in original). The opinion omits any discussion or analysis of the information required in an affidavit to establish a narcotics dog's reliability. Accordingly, we rely not on *Neth*.

Reliability may be premised on a statement that the dog is trained and certified without a showing of the dog's reliability record. *State v. Gross*, 57 Wn. App. 549, 551, 789 P.2d 317 (1990). Unlike in *Neth*, Sergeant Loren Culp's warrant affidavit contained information on Isko's certification, training, and limitations. Sergeant Culp declared that the State of Washington certified him and canine Isko as a Narcotics K9 Team. Isko received training to detect miniscule amounts of marijuana, heroin, methamphetamine, crack cocaine, cocaine, and ecstasy. Based on these facts, Culp's affidavit contained sufficient facts to establish Isko's reliability.

14

No. 34154-2-III
*State v. Souza*

CONCLUSION

We affirm the trial court's denial of Jon Souza's motions to suppress. We thereby affirm Souza's convictions for possession of a controlled substance and use of drug paraphernalia.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

15