[No. 15230-1-I. Division One. August 4, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. CINDI LU BOYCE, *Appellant.*

*Dori Jones* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Michael D. Magee* and *Seth Aaron Fine, Deputies,* for respondent.

COLEMAN, J.—Cindi Lu Boyce appeals her conviction for possession of a controlled substance with intent to manufacture or deliver. We affirm.

On July 15, 1983, an informant advised detectives of the Everett Police Department Narcotics Unit that Boyce was distributing and selling heroin in Everett. The informant also told the police that Boyce kept her main supply of heroin in a safety deposit box in a bank in Everett.

The Everett police verified several facts provided by the informant and began a surveillance of Boyce and her alleged distributor. On July 22, 1983, a detective made contact with several banks in the Everett area and determined that Boyce had a safety deposit box at Olympic Bank. Later that day, a detective entered the vault area at Olympic Bank along with narcotics detection dog Sammy.[1] Sammy "alerted"[2] to box 19, which was Boyce's box. Based on the surveillance, the informant's tip, and the canine sniff, the police obtained a warrant to search Boyce's safety deposit box. Heroin was found in the box.

Boyce moved to suppress evidence seized as a result of the search of the safety deposit box. She argued, *inter alia,*

---

[1]In ruling on the motion to suppress, the court found that the bank gave the detective permission to enter the vault area with Sammy. The court also found that a bank customer does not have complete control over who may be in the vault area and that the bank had the authority to allow people into the vault area.

[2]At the motion to suppress, Sammy's handler described an "alert" as follows:

"It usually starts off with an intensive sniffing of the area, followed usually by what we call a tail flag, the tail will rise and hair at the base of the tail usually comes up a little bit. That's usually followed by an aggressive pouring or scratching at the article, the area which she's alerting on, and can be followed by a biting sequence if I allow it to go that far."

In the present case, the alert did not progress to biting and scratching.

that the canine sniff was an unreasonable search in the absence of a warrant. The court denied the motion to suppress, and Boyce was convicted on stipulated evidence.

On appeal, Boyce raises a single issue. She contends that the canine sniff of her safety deposit box without a warrant violated article 1, section 7 of the Washington Constitution.

As Boyce concedes, this issue has already been settled under Fourth Amendment analysis. In *United States v. Place,* 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983), the United States Supreme Court stated that a canine sniff is not a search within the meaning of the Fourth Amendment. After holding that a traveler's luggage could be detained on the basis of reasonable, articulable suspicion that the luggage contains contraband or evidence of a crime, the Court stated that exposing the detained luggage to a narcotics detection dog was not a search. The canine sniff, the Court said,

> does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

*United States v. Place,* at 707.

In *United States v. Jacobsen,* 466 U.S. 109, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984), the Court reaffirmed its *Place* analysis. In *Jacobsen,* the Court analyzed whether a chemical field test was a search under the Fourth Amendment. Analogizing to a canine sniff, the Court held that a chemical test that merely discloses whether or not a substance is

cocaine does not compromise any legitimate interest in privacy.

Congress has decided—and there is no question about its power to do so—to treat the interest in "privately" possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably "private" fact, compromises no legitimate privacy interest.

(Footnote omitted.) *United States v. Jacobsen,* at 123.

Since the decision in *Place,* state courts have applied the Supreme Court's holding in a variety of factual contexts. *See, e.g., Cardwell v. State,* 482 So. 2d 512 (Fla. Dist. Ct. App. 1986) (canine sniff of vehicles at roadblock not a search); *People v. Salih,* 173 Cal. App. 3d 1009, 219 Cal. Rptr. 603 (1985) (canine sniff of mailed parcel not a search); *Strout v. State,* 688 S.W.2d 188 (Tex. Ct. App. 1985) (canine sniff of safety deposit box not a search).

Several states have considered whether a canine sniff is a search under their state constitutions. *See People v. Unruh,* 713 P.2d 370 (Colo. 1986) (canine sniff of locked safe was search under Colorado Constitution requiring reasonable suspicion); *State v. Kosta,* 75 Or. App. 713, 708 P.2d 365 (1985), *review allowed,* 300 Or. 545, 715 P.2d 92 (1986) (court specifically reserves question of whether canine sniff is a search under Oregon Constitution; court decides that even if it was a search, it was reasonable); *Pooley v. State,* 705 P.2d 1293 (Alaska Ct. App. 1985) (canine sniff of luggage was search under Alaska Constitution requiring reasonable suspicion); *State v. Snitkin,* ___ Hawaii ___, 681 P.2d 980 (1984) (canine sniff of package in cargo holding room not a search under Hawaii Constitution; however, court must still determine reasonableness of dog's use in particular circumstances). When courts do characterize the sniff as a search, they usually analogize the minimally intrusive nature of the search to the "stop and frisk" situation in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), requiring a reasonable suspicion in order

to carry out the search.[3]

Boyce argues that article 1, section 7 of the Washington Constitution, which states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law", provides greater protection for individual rights in this situation. Our Supreme Court recently set out a framework for determining when it is appropriate to resort to independent state constitutional grounds to decide a case rather than deferring to comparable provisions of the United States Constitution. In *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986), the court set forth six nonexclusive criteria as relevant in determining whether, in a given situation, the Washington State Constitution extends broader rights to its citizens than the United States Constitution: (1) the textual language of the state constitution, (2) significant differences in the texts of parallel provisions of the federal and state constitutions, (3) state constitutional and common law history, (4) preexisting state law, (5) differences in structure between the federal and state constitutions, and (6) matters of particular state interest or local concern. *Gunwall,* at 59.

█ In this case, we address the same state and federal constitutional provisions that were at issue in *Gunwall.* Thus, our analysis tracks the analysis of the *Gunwall* court. First "due to the explicit language of Const. art. 1, § 7, under the Washington Constitution the relevant inquiry for determining when a search has occurred is whether the State unreasonably intruded into the defendant's 'private affairs.'" *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). Next, we note, as did the *Gunwall* court, that the language of Const. art. 1, § 7 substantially differs from the parallel provision of the federal constitution. Third, we rec-

[3]Justice Blackmun referred to this approach in his concurrence in *United States v. Place,* 462 U.S. 696, 723, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983), stating, "While the Court has adopted one plausible analysis of the issue, there are others. For example, a dog sniff may be a search, but a minimally intrusive one that could be justified in this situation under *Terry* upon mere reasonable suspicion."

ognize that our State Constitutional Convention specifically rejected a proposal to adopt language identical to that of the Fourth Amendment.

We next examine preexisting state law to determine if federal constitutional analysis is consistent with previously developed state law. *State v. Brooks,* 43 Wn. App. 560, 567, 718 P.2d 837 (1986). A single Washington case, decided before *Place* and *Jacobsen,* addresses the validity of a canine sniff. In *State v. Wolohan,* 23 Wn. App. 813, 598 P.2d 421 (1979), *review denied,* 93 Wn.2d 1008 (1980), the court held that a canine sniff of a package being sent by common carrier was not an illegal search. Relying on Fourth Amendment analysis, the court found that the defendant had no reasonable expectation of privacy in the area in which the parcel was located or in the air space surrounding the package. In a footnote, however, the court limited its holding:

> While the issue is not before us, we entertain grave doubts whether the above rationale would permit a similar search in a public waiting room or of carry–on luggage, parcels or other personal effects on or near the person. Obviously, such a search would invade a person's legitimate expectation of privacy.

*Wolohan,* at 820 n.5.

Clearly, the approach taken by the United States Supreme Court in *Place* and *Jacobsen* differs from the approach taken in *Wolohan.* The United States Supreme Court has adopted the rule that a canine sniff is not a search because it reveals only whether or not there is contraband present. The *Wolohan* court, however, indicated that whether or not a canine sniff is a search may depend on the circumstances of the sniff itself. We conclude that Const. art. 1, § 7 requires us to consider the circumstances of a canine sniff in order to determine whether the sniff is a search. Thus, we do not adopt the United States Supreme Court's blanket holding that canine sniffs are not searches. Instead, under our constitution we examine the nature of the intrusion into the defendant's private affairs that is

occasioned by the canine sniff.

 ■ Applying this analysis to the present case, we find that the canine sniff of Boyce's safety deposit box was not a search under Const. art. 1, § 7. Indeed, we can envision few situations where a canine sniff of an object[4] would unreasonably intrude into the defendant's private affairs. As long as the canine sniffs the object from an area where the defendant does not have a reasonable expectation of privacy, and the canine sniff itself is minimally intrusive, then no search has occurred.

The facts of this case indicate that (1) the officers had permission to be in the vault area, (2) a person who has a safety deposit box in that bank does not have complete control over who will be in the vault area, (3) the court found that there was no seizure of Boyce's safety deposit box, and (4) a canine sniff of the air outside the safety deposit box was minimally intrusive. Under these circumstances, the canine sniff was not a search under Const. art. 1, § 7.

The judgment is affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.

---

[4]A canine sniff of a person or of effects on or near a person presents a different issue and may require a reasonable suspicion that contraband was present. *See* Loewy, *The Fourth Amendment as a Device for Protecting the Innocent,* 81 Mich. L. Rev. 1229, 1246–47 (1983) ("the very act of being subjected to a body sniff by a German Shepherd may be offensive at best or harrowing at worst to the innocent sniffee." (Footnote omitted.)); 1 W. LaFave, *Search and Seizure* § 2.2, at 120 (Supp. 1986) ("a sniff directed at objects being carried by the person is no less objectionable . . ."). That issue, however, is not before us, and its resolution must await an appropriate case.