COURT OF APPEALS DIV I
2014 JUN 23 AM 9: 12



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69799-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| AMY CAROL TAYLOR, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | FILED: June 23, 2014 |

BECKER, J. — In this drug possession case, an officer pulled in behind a parked vehicle, activated his rear strobe lights for illumination, contacted the driver, asked her if she had a valid driver's license, examined the license when she handed it to him, ran a warrants check, discovered an outstanding warrant, and arrested her on the warrant. We conclude there was no seizure until the driver was arrested.

The encounter occurred at 1:12 a.m. on September 3, 2012. A Marysville police officer signaled over the radio that he was conducting a traffic stop and that another vehicle, a small truck, had turned into a gravel driveway area off the road nearby. Snohomish County Deputy Sheriff Dan Dusevoir responded. When he arrived, he stopped his vehicle behind the truck, activated his rear strobe lights, and approached on foot. Deputy Dusevoir testified that when he

saw the truck's occupants, he recognized them from earlier contacts, including one involving the recovery of a significant amount of methamphetamine.

Deputy Dusevoir asked appellant Amy Taylor, the driver of the vehicle, if she was "clear." The parties agree that Taylor correctly understood he was asking if she had a valid driver's license. Taylor handed him her license. While standing by the driver's side window, Deputy Dusevoir performed a warrants check using his radio and discovered that there was an outstanding warrant for Taylor's arrest. He moved to take Taylor into custody by opening the car door and taking hold of Taylor's left wrist.

Taylor resisted and appeared to be clutching something tightly in her hand. Deputy Dusevoir suspected that Taylor had attempted to dispose of something between the passenger seat and the driver's seat. Once out of the vehicle, Taylor appeared to drop something, grind it into the gravel with her foot, and kick it away. Deputy Dusevoir suspected that she was trying to dispose of narcotics. He called for a K-9 officer.

The K-9 officer brought a narcotics detection dog to the scene. The dog sniffed the outside of the vehicle and alerted to the presence of drugs. The car was impounded. Five days later, a search warrant was authorized, based on affidavits documenting Deputy Dusevoir's observations and the training and history of the drug dog and her handler.

When the car was searched pursuant to the warrant, methamphetamine was found in two separate containers in the vehicle. One plastic container containing 3.38 grams of methamphetamine was located between the front seats

of the vehicle. Another containing 27.78 grams of methamphetamine was found behind the seats. Taylor was charged with two counts of possession of methamphetamine. Taylor moved to suppress the methamphetamine. The court denied the motion. Taylor was tried by a jury and convicted as charged.

Taylor contends Deputy Dusevoir's actions before he learned of the outstanding warrant constituted a seizure. If his actions did constitute a seizure, the seizure was unlawful. Detentions must be supported by reasonable suspicion. State v. Hudson, 124 Wn.2d 107, 112, 874 P.2d 160 (1994). Under the Fourth Amendment and article I, section 7, the facts relied on by the detaining officer must be specific and articulable, rather than premised on a hunch. Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); State v. Armenta, 134 Wn.2d 1, 20, 948 P.2d 1280 (1997). All the deputy knew when he arrived at the scene was that Taylor had pulled over when the Marysville police officer pulled another car over and she had parked on the side of the road. He had no specific or articulable suspicion of criminal activity until he discovered Taylor's outstanding warrant. We conclude, however, that nothing the deputy did up to that point amounted to a seizure.

A seizure of a person occurs if, in full view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); State v. Young, 135 Wn.2d 498, 501, 957 P.2d 681 (1998). "A police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter

3

to an investigative detention." Armenta, 134 Wn.2d at 11. The fact that the person approached is in a parked vehicle does not by itself convert the encounter into a seizure. The focus of the inquiry is not on whether the defendant's movements are confined due to circumstances independent of police action, but on whether the police conduct was coercive. State v. Thorn, 129 Wn.2d 347, 353, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 570, 62 P.3d 489 (2003). Thus the question is not merely whether the defendant felt free to leave, but "whether he felt free to terminate the encounter, refuse to answer the officer's question, or otherwise go about his business." Thorn, 129 Wn.2d at 353.

In O'Neill, the court held no seizure occurred when an officer approached a car that was parked in a public space, shined his spotlight on it, knocked on the window, shined his flashlight in the face of the occupant, and asked for identification. O'Neill, 148 Wn.2d at 572-73, 581.

The fact that Deputy Dusevoir activated his rear strobe lights for safety instead of using a flashlight does not distinguish this case from O'Neill. It would be a different question if he had activated his emergency lights because that is more clearly a display of authority signaling that the driver of the vehicle is not free to leave. State v. Gantt, 163 Wn. App. 133, 141-42, 257 P.3d 682 (2011), review denied, 173 Wn.2d 1011 (2012). But as the State argues, an officer is not expected to engage in nighttime roadside contacts in the dark. Doing so would pose a hazard both to the officer and to passing motorists. The use of the strobe light here was no more intimidating than the officer's use of the flashlight in

4

O'Neill to shine a light on the face of the occupant or the use of a spotlight in State v. Mote, 129 Wn. App. 276, 120 P.3d 596 (2005).

In Taylor's view, the part of the encounter that most clearly manifested a show of authority such that a reasonable person would not feel free to leave was the deputy's question to Taylor about whether she had a valid driver's license.

An officer may request the name and date of birth of the occupant of a parked vehicle and use that information to conduct a warrants check without a seizure occurring. Mote, 129 Wn. App. at 292. Taylor contends that asking whether she had a valid driver's license was more coercive than merely asking for identification because it indicated the officer's suspicion that she was driving illegally and implicitly commanded her to prove that she was not.

At oral argument before this court, Taylor asserted that a factually comparable case showing that the officer's question was coercive is State v. Soto-Garcia, 68 Wn. App. 20, 841 P.2d 1271 (1992), abrogated on other grounds by Thorn, 129 Wn.2d 347, 351, 917 P.2d 108 (1996). In that case, an officer who was patrolling a street in Kelso at night saw the defendant walking out of an alley and asked him where he was going and what he was doing. The defendant answered these questions appropriately. The officer next asked the defendant for his name. The defendant offered his driver's license. The officer asked him if he had any cocaine on his person. The defendant responded that he did not. The officer asked for permission to search the defendant. The defendant gave permission. The officer reached into the defendant's shirt pocket and found cocaine. This led to a charge of cocaine possession. The trial court granted the

defendant's motion to suppress. The State appealed. The trial court ruling was affirmed on the ground that the discovery of the cocaine was the result of coercive questioning that occurred before the officer had a reasonable suspicion of criminal activity:

> Considering all of the circumstances surrounding the encounter between Tate and Soto-Garcia, the evidence was sufficient for the trial court to conclude that a reasonable person would not have felt free to decline the police officer's requests that he provide information regarding his activities and submit to a search. The atmosphere created by Tate's progressive intrusion into Soto-Garcia's privacy was of such a nature that a reasonable person would not believe that he or she was free to end the encounter.
>
> The trial court's findings, as well as the record, reveal that Soto-Garcia had done nothing before being confronted by Tate which would suggest that he had committed any criminal act. Soto-Garcia was merely walking on the streets of Kelso in the late evening, albeit in an area apparently known for cocaine trafficking, when Tate observed him. For reasons known only to the officer, Tate confronted Soto-Garcia and began questioning him. After Soto-Garcia answered Tate's questions "appropriately", Tate decided to run an "identification check". While Soto-Garcia apparently produced his identification voluntarily in response to Tate asking him his name, there is no evidence that suggests that he consented to the identification check. Although the check revealed no outstanding warrants for Soto-Garcia, Tate apparently remained curious, and he asked Soto-Garcia if he had any cocaine on his person. We agree with the trial judge that at this point, Soto-Garcia was seized.

Soto-Garcia, 68 Wn. App. at 25.

Unlike in Soto-Garcia, here there was no "progressive intrusion" into Taylor's privacy. The officer asked her only one question. In view of the totality of the circumstances, nothing suggests that the question was more coercive than asking to see her license or asking for her name and date of birth. We conclude

the question asked here was not an appreciably greater show of authority than the request for identification in O'Neill.

In response to the question, Taylor handed over her driver's license. She contends that a seizure occurred when Deputy Dusevoir held onto the license while using his radio to check for warrants. But the deputy did not leave with the license. He testified that he was standing right next to Taylor while he was holding her license. If the license is not removed from the defendant's presence, there is no seizure. State v. Smith, 154 Wn. App. 695, 700, 226 P.3d 195, review denied, 169 Wn.2d 1013 (2010).

Taylor argues that use of the identifying information found on her license to run a warrants check was an investigatory detention like in State v. Rankin, 151 Wn.2d 689, 695-97, 92 P.3d 202 (2004) (seizure of passenger occurred when officer, in the course of a lawful traffic stop, requested passenger's personal information and ran a warrants check). But the Rankin court was "focused on the different circumstances encountered by pedestrians and passengers in *moving* cars that were *stopped* by police." Mote, 129 Wn. App. at 290.

Following O'Neill and Mote, we conclude Taylor was not seized until she was arrested on the warrant.

The other disputed issues in the case involve the dog sniff. Taylor contends the dog sniff was a search and the results must be suppressed because it was conducted without a warrant.

A dog sniff of a place where the defendant does not have a reasonable expectation of privacy does not constitute a search. State v. Boyce, 44 Wn. App. 724, 723 P.2d 28 (1986). In Boyce, the dog sniffed a bank safe deposit box. The dog handler had permission to be in the area, the defendant could not control who was there, and there was no seizure of the safety deposit box. Boyce, 44 Wn. App. at 730. The court found it was not a search:

> As long as the canine sniffs the object from an area where the defendant does not have a reasonable expectation of privacy, and the canine sniff itself is minimally intrusive, then no search has occurred.

Boyce, 44 Wn. App. at 730. Cf. State v. Dearman, 92 Wn. App. 630, 635, 962 P.2d 850 (1998) (under article I, section 7, a dog sniff is a search when it is directed at the outside of a home), review denied, 137 Wn.2d 1032 (1999).

No material distinction exists between a dog sniff directed at the exterior of a vehicle and a dog sniff directed at a safety deposit box. This court has already held, on slightly different facts, that a dog sniff of a vehicle is not a search. State v. Hartzell, 156 Wn. App. 918, 237 P.3d 928 (2010). In Hartzell, the dog sniffed the air coming from an open window of a car and then led police to a firearm 100 yards away. We concluded that the defendant did not have a reasonable expectation of privacy in the air coming from the open window of the vehicle. Hartzell, 156 Wn. App. at 929-30.

Boyce and Hartzell establish that when the officer and dog are lawfully situated outside the place or object being sniffed, then no privacy interest is implicated as long as the place is not a home. Here, the K-9 handler and dog were lawfully present outside Taylor's car. Following Boyce and Hartzell, we

conclude the dog sniff did not constitute a search. <u>Accord</u>, <u>Illinois v. Caballes</u>, 543 U.S. 405, 409, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005).

The dog alerted after sniffing Taylor's car, signaling the presence of drugs. This information was included in the affidavit in support of a warrant to search the car. Taylor challenges the adequacy of the affidavit.

The affidavit described the dog team's training. The training included a 4-week course for the officer and dog together and a 14-week course for the dog alone. According to the affidavit, the officer and dog had a history of "800 applications where controlled substances were discovered and / or the odor of controlled substances was present." However, the affidavit contained no information about the frequency of false alerts, and Taylor argues that the number of correct alerts by the dog is meaningless unless accompanied by a track record of false positive and false negatives.

Generally, an alert by a trained drug dog is sufficient to establish probable cause for the presence of a controlled substance. <u>State v. Jackson</u>, 82 Wn. App. 594, 606, 918 P.2d 945 (1996), <u>review denied</u>, 131 Wn.2d 1006 (1997). This court has determined that an affidavit similar to the one in this case was sufficient to establish probable cause. <u>State v. Flores-Moreno</u>, 72 Wn. App. 733, 741, 868 P.2d 648, <u>review denied</u>, 124 Wn.2d 1009 (1994). The affidavit stated that the drug dog had received 525 hours of training, had been certified by the Washington State Police Canine Association for narcotics detection, and had participated in 97 searches where narcotics were found. <u>Flores-Moreno</u>, 72 Wn. App. at 741. Following <u>Flores-Moreno</u>, we conclude the information about the

9

track record of the dog and her handler was sufficient even though it did not quantify the number of inaccurate alerts.

And even if the dog sniff did not conclusively establish probable cause, the warrant was also supported by Deputy Dusevoir's observation that Taylor appeared to hide something between the seats of the vehicle and then grind something into the ground when she was arrested.

We conclude the information offered in support of the warrant was enough to establish probable cause to search the vehicle.

Taylor was convicted of two counts of possession of methamphetamine based on the two containers found in different places inside the car. She contends the two convictions violate double jeopardy because both containers of methamphetamine were found in the same search. The State concedes this point. We accept the concession. State v. Adel, 136 Wn.2d 629, 965 P.2d 1072 (1998).

Taylor filed a statement of additional grounds in which she challenges the credibility of the deputy who arrested her. She suggests that the other occupant of the vehicle was the owner of the drugs, and she points out alleged inconsistencies in the evidence and testimony. Because this court does not resolve disputed facts or issues of credibility, the statement of additional grounds does not present issues warranting further scrutiny.

Affirmed in part. We reverse and remand with instructions to vacate the second conviction for possession of methamphetamine.

Becker, J.

Cox, J.

Dwyer, J.