# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 82536-4-I |
| v. | |
| SHASTA RAYE CONNER, | UNPUBLISHED OPINION |
| Appellant. | |

DWYER, J. — Shasta Conner was charged with and convicted of two counts of possession of a controlled substance with intent to deliver. On appeal, Conner contends that the trial court erred by denying her motion to suppress evidence found in her vehicle pursuant to a search warrant. Finding no error, we affirm.

I

In September 2016, Department of Corrections (DOC) probationer Robert Carter agreed to provide information to the police in exchange for a positive recommendation on his pending charges after being found in possession of a stolen handgun and a large amount of prepackaged methamphetamine. Carter identified Shasta Conner from photographs as his supplier of heroin.

In January 2017, Ian Lawhead was arrested on a DOC warrant. Lawhead explained to a DOC officer that, at the time of his arrest, he was waiting to purchase heroin from a person named "Shasta." Lawhead identified Conner as "Shasta" from a photograph. Lawhead stated that he had purchased heroin from

Conner three days earlier. He agreed to attempt to purchase narcotics from Conner and allowed officers to photograph his text message exchange with Conner. Lawhead also spoke to Conner on the telephone in the presence of officers.

During the text message exchange, Conner informed Lawhead that she had "to go home." Lawhead asked if he could go to Conner's house to make a purchase. Conner refused, asserting that she "do[esn't] do deals out of [her] house."

Police detectives went to Conner's home and set up surveillance outside. When Conner arrived, she parked on the public street in front of her home. The officers stopped Conner when she exited her vehicle. Conner did not consent to a search of the vehicle. Conner was detained and a dog trained to detect methamphetamine, cocaine, and heroin was deployed to sniff Conner's car. The dog alerted to the presence of one of those substances in Conner's trunk.

Conner was released but her car was seized pending an application for a search warrant. A search warrant was issued. Execution of the warrant resulted in the discovery of half a pound of heroin, methamphetamine, drug paraphernalia, a digital scale, and $3,178 in United States currency in Conner's trunk.

Prior to trial, Conner moved to suppress the evidence found in her trunk, contending that the dog's sniff and alert occurred during an unlawful seizure. After a hearing on the motion, the trial court made the following pertinent findings of fact:

4. [Carter] identified the Defendant, Shasta Conner, as his heroin dealer in Clark County.

5. [Carter] also identified her in pictures and indicated that she moved a fair quantity of heroin in Clark County.

6. The above information from Mr. Carter was included in the January 26, 2017 search warrant affidavit.

. . . .

9. [Lawhead] identified his dealer as the Defendant, Shasta Conner, and that he had purchased from her three days prior.

10. Mr. Lawhead also said the Defendant drives a black Maxima and that she usually has a portable safe with her and it is often in the trunk and she would take it inside her house with her.

. . . .

12. Mr. Lawhead agreed to attempt to purchase heroin from the Defendant on that day by texting in front of DOC Officer Rees Campbell.

13. Pictures of texts are part of the search warrant affidavit, and they showed conversations between Mr. Lawhead and the Defendant and appeared to negotiate a price and locations.

. . . .

16. The Defendant told him she was going home and Mr. Lawhead asked if he could come to her house and she replied, "No way. I don't do deals out of my house."

17. During the texts, Mr. Lawhead called the Defendant and asked when they could meet, and she said she was in Portland and would get ahold of him in about an hour.

18. The above information from Mr. Lawhead was included in the January 26, 2017 search warrant affidavit.

19. Later, upon VPD Sergeant Spencer Harris's contact with the Defendant, the voice of the Defendant and the voice on the phone with Mr. Lawhead appeared to be the same. This information was included in the January 26, 2017 search warrant affidavit.

20. Still on January 26, 2017, Sergeant Harris, CCSO Detective Erik Zimmerman, and CCSO Detective Robert Anderson went to the Defendant's home and set up surveillance.

21. When the Defendant arrived she parked her black Maxima on the public street in front of her house.

22. The three detectives moved in and confronted the Defendant outside of her car as she was approaching the trunk of her car.

23. The detectives sought consent to search the car and she refused.

24. The defendant was placed in handcuffs and was given her Miranda[1] warnings.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

25. Detective Anderson deployed his drug sniffing dog, who is only trained to detect methamphetamine, cocaine, and heroin, to go around the black Maxima parked on the street.

26. The dog hit positive for drugs on the trunk of the car, and the dog sniff information was included in the January 26, 2017 search warrant affidavit.

27. The Defendant was released at the scene but her phones, purse, and car were seized pending an application for a search warrant.

28. A search warrant was granted later that day and execution of the warrant resulted in seizure of approximately a half pound of heroin and methamphetamine, drug paraphernalia, a digital scale, and $3,178 in US currency.

The trial court also made the following pertinent conclusions of law:

7. The information from Mr. Carter was by itself stale by the time this warrant was requested, as a little more than four months had passed.

. . . .

10. Standing alone, there is too much passage of time between the observation by Mr. Carter and the warrant.

11. Even if the information is stale standing alone it may be used to provide probable cause if it is confirmed by other more recent information, such as the information from Mr. Lawhead.

12. Both Mr. Lawhead and Mr. Carter are sharing similar information about the Defendant being a drug dealer.

13. It was reasonable that the issuing Magistrate could infer the drug dealing was still ongoing despite the lapse of time based upon the ongoing nature of the crime, and supported by the new corroborating information of a similar, matching nature.

. . . .

34. The totality of the circumstances gave the officers reasonable suspicion to briefly detain the Defendant and deploy the dog in a non-invasive manner to sniff the car in a public space where the Defendant did not have a reasonable expectation of privacy.

The trial court therefore denied Conner's motion to suppress. Conner was convicted following a bench trial.

Conner appeals.

4

II

Conner contends that the trial court erred by denying her motion to suppress the evidence found in the trunk of her vehicle. This is so, she asserts, because "[t]here was no probable cause to issue the search warrant" authorizing a search of her vehicle. Because we conclude that the search warrant was supported by probable cause, we decline to grant Conner appellate relief.

While a search warrant may be issued only upon a judicial determination of probable cause, the issuance itself is a "highly discretionary" act. State v. Chenoweth, 160 Wn.2d 454, 477, 158 P.3d 595 (2007); State v. Cole, 128 Wn.2d 262, 286, 906 P.2d 925 (1995).

Once issued, a warrant is entitled to a presumption of validity and courts will afford "great deference to the magistrate's determination of probable cause and view the supporting affidavit for a search warrant in a commonsensical manner rather than hypertechnically." Chenoweth, 160 Wn.2d at 477. Thus, "doubts concerning the existence of probable cause" will generally be resolved "in favor of the validity of the search warrant." Chenoweth, 160 Wn.2d at 477.

Although the issuance of a warrant is generally reviewed for abuse of discretion, the assessment of probable cause is a legal conclusion we review de novo. State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). "Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." State v. Maddox, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). "It is only the probability

of criminal activity, not a prima facie showing of it, that governs probable cause." Maddox, 152 Wn.2d at 505. "Generally, an 'alert' by a trained drug dog is sufficient to establish probable cause for the presence of a controlled substance." State v. Jackson, 82 Wn. App. 594, 606, 918 P.2d 945 (1996).

As the trial court determined,[2] the search warrant affidavit included (1) information from both Carter and Lawhead, (2) photographs of text messages exchanged between Lawhead and Conner, appearing to negotiate a location and price, and (3) information about the dog alerting in response to the trunk of Conner's vehicle. Given that a trained drug dog alert alone is sufficient to establish probable cause, the search warrant affidavit was clearly sufficient to establish probable cause.

Conner does not assign error to the trial court's factual findings. Rather, she asserts that the information from Lawhead and Carter was insufficient and that "[a] drug-sniffing dog search . . . in the absence of a legitimate stop, is illegal and does not constitute probable cause to justify issuance of a search warrant." Not so. As the trial court correctly determined (and as Conner does not challenge on appeal), the dog sniff occurred during a legitimate Terry[3] stop. The totality of the circumstances, including the older information from Carter, the new information from Lawhead, and corroboration by officers of information from Lawhead, gave officers reasonable suspicion to detain Conner and deploy a trained dog in a noninvasive manner.

---

[2] The trial court's factual findings are unchallenged. Accordingly, they are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[3] Terry v. Ohio, 392 U.S. 1, 88 S. Ct 1868, 20 L. Ed. 2d 889 (1968).

A trained dog's alert may establish probable cause, so long as the sniff itself does not constitute an unlawful search. Jackson, 82 Wn. App. at 606; accord Florida v. Harris, 568 U.S. 237, 247-48, 133 S. Ct. 1050, 185 L. Ed. 2d. 61 (2013).

The sniff at issue did not constitute an unlawful search under either the federal or state constitutions. "A 'canine sniff by a well-trained narcotics detection dog'" in a public place does "not constitute a 'search' within the meaning of the Fourth Amendment." United States v. Place, 462 U.S. 696, 706-07, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983); accord Illinois v. Caballes, 543 U.S. 405, 410, 125 S. Ct. 834, 160 L. Ed .2d 842 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."). Similarly, under the state constitution, whether a "canine sniff is a search depends on the circumstances of the sniff itself." State v. Hartzell, 156 Wn. App. 918, 929, 237 P.3d 928 (2010) (citing State v. Boyce, 44 Wn. App. 724, 729, 723 P.2d 28 (1986)). "[A]s long as the canine 'sniffs the object from an area where the defendant does not have a reasonable expectation of privacy, and the canine sniff itself is minimally intrusive, then no search has occurred.'" Hartzell, 156 Wn. App. at 929 (quoting Boyce, 44 Wn. App. at 730).

As the dog herein sniffed Conner's vehicle during a Terry stop, from outside the vehicle and on a public street, the sniffing did not intrude into an area where Conner had a reasonable expectation of privacy. No constitutional

7

violation occurred during the dog sniff.  The sniff was not itself an unlawful search and was properly used to establish probable cause to obtain a warrant.

Affirmed.

WE CONCUR: